IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VINCENT J.,[1]                                    Case No. 6:22-cv-01799-SB

               Plaintiff,                      **OPINION AND ORDER**

       v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

             Defendant.

---

**BECKERMAN, U.S. Magistrate Judge.**

     Vincent J. ("Plaintiff") brings this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act. The Court has jurisdiction over this appeal pursuant to

42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a magistrate judge

pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court reverses the

Commissioner's decision and remands this case for further administrative proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case and his immediate family members.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id*. Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I.    PLAINTIFF'S APPLICATION

Plaintiff was born in May 1968, making him forty-seven years old on August 18, 2015, his alleged disability onset date.[2] (Tr. 13, 24.) Plaintiff is a high school graduate. (*Id*. at 24.) In

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 1:07-cv-01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008) (citation omitted). Workers accumulate quarters of coverage based on their earnings. *Id*. Typically, "the claimant must have

his application for benefits, Plaintiff alleged disability due to the following conditions: attention-deficit/hyperactivity disorder ("ADHD"), bipolar disorder, post-traumatic stress disorder ("PTSD"), anxiety, dyslexia, carpal tunnel in wrists, elbow injury, and depression. (*Id.* at 342.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on March 29, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id*. at 150.) Plaintiff, his attorney, and a vocational expert ("VE") appeared via telephone and testified at an administrative hearing on January 8, 2018. (*Id*.) On June 29, 2018, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 114-25.) On December 19, 2019, the Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ for further proceedings. (*Id*. at 130-34.)

On July 22, 2021, Plaintiff, his attorney, and a VE appeared via telephone and testified at a second administrative hearing. (*Id.* at 65-80.) On August 4, 2021, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 13-25.) On September 13, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-3.) Plaintiff now seeks judicial review of that decision.

///

///

---

a minimum of twenty quarters of coverage [during the rolling forty-quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citation omitted). Thus, Plaintiff's date last insured of June 30, 2019 (Tr. 14) reflects the date on which his insured status terminated based on the previous accumulation of quarters of coverage. If Plaintiff established that he was disabled on or before June 30, 2019, he is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id*. at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 13-25.) At step one, the ALJ determined that Plaintiff had not engaged in

substantial gainful activity since August 18, 2015, the alleged onset date. (*Id.* at 16.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: "unspecified neurological disorder; attention-deficit/hyperactivity disorder (ADHD); depressive disorder; posttraumatic stress disorder (PTSD); and anxiety disorder." (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 17-18.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except for the following:

> [H]e is limited to simple routine tasks consistent with a reasoning level of 2 and unskilled work as defined by the Dictionary of Occupational Titles (DOT)[,] . . . minimal change in the tasks as assigned, the assigned work must require no contact with the public, and no more than occasional brief work-related, intermittent contact with coworkers and supervisors.

(*Id.* at 18.) At step five, the ALJ determined that a significant number of jobs existed in the national economy that Plaintiff could perform, including work as an agricultural produce sorter, housekeeping cleaner, and assembler small products I. (*Id.* at 24-25.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ (1) improperly discounted Plaintiff's symptom testimony; (2) improperly discounted lay witness testimony; and (3) improperly evaluated the medical opinion of Dr. Keith Orton, Ph.D. (Pl.'s Opening Br. ("Pl.'s Br.") at 4-14, ECF No. 23.)

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664,

678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (first citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); then citing *Lingenfelter*, 504 F.3d at 1040; and then citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 19, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms[.]") The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's

symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ met that standard here.

### 1. Improvement and Effective Treatment

The ALJ properly discounted Plaintiff's testimony based on his improvement and effective treatment.

An ALJ may discount a claimant's testimony based on evidence that his symptoms improved with treatment or were well controlled with medication. *See, e.g., Burkett v. Saul*, 806 F. App'x 509, 512 (9th Cir. 2020) (holding that "[t]he ALJ offered specific, clear and convincing reasons for finding [the claimant]'s testimony not to be credible, including that her testimony . . . contradicted . . . record evidence that her kidney disease had improved, . . . that her hypertension was under control, and . . . that [her] depression is well controlled (when on medication regularly)" (citing *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014))); *see also Torres v. Saul*, 798 F. App'x 979, 981 (9th Cir. 2019) (holding that the ALJ "proffered specific, clear, and convincing reasons for discounting [the claimant]'s pain and limitations testimony because the record showed that [her] conditions improved with treatment and were less severe than alleged" (citing *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007))); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (explaining that "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility") (citations omitted).

Similar to the cases described above, the ALJ here appropriately discounted Plaintiff's testimony based on evidence that his symptoms and limitations improved with treatment. The ALJ first acknowledged that Plaintiff alleged disabling "problems with comprehension and anger[,] . . . flashbacks, increased startled responses, hypervigilance, and paranoia." (Tr. 19.) The

ALJ then found that, despite Plaintiff's claims of disabling mental health impairments, Plaintiff

"consistently reported that [his medications] were helping with sleep, nightmares, and

irritability." (*Id*. at 20.) The ALJ cited numerous medical records from October 2015 through

August 2018 demonstrating that, although Plaintiff continued to struggle at times with low

motivation and problems with sleep, focus, irritability, and anger, his overall symptoms

improved in response to medications prescribed by Plaintiff's treating physician, Dr. Stephen

Mann, and from counseling sessions with Dr. Orton. (*Id*., citing *id*. at 745, 753, 759, 769, 773,

1090-92, and 1095-97.) The following notes from the medical records cited by the ALJ

demonstrate that the ALJ's evaluation was supported by substantial evidence:

- October 1, 2015: Plaintiff reported "struggling a great deal with mood lability, adequacy of sleep, relationships, and basic functioning. . . . [and] doesn't feel that he can work"; Plaintiff reported that "Seroquel . . . helps with sleep and dampens irritability" and that "Vyvanse gives him a fighting chance in being organized to get through the day[.]" (*Id*. at 745.)

- June 8, 2016: Dr. Mann noted that Plaintiff "does not seem to be severely depressed or anxious," and Plaintiff reported that he has been "seeing the therapist 1 hour every week and that has been very helpful," "olanzapine really helped with impulsive anger control but his motivation and general energy is very low," and "he continues to find benefit with the prazosin . . . for the nightmares and disrupted sleep." (*Id*. at 773.)

- August 7, 2016: Dr. Mann noted that Plaintiff was "more alert and more animated than on prior visits and his psychometrics show significant improvements in the scores" (*id*. at 769); Plaintiff reported that he continues his weekly therapy with Dr. Orton and "attributes that counseling to starting to feel better" (*id*.); Dr. Mann noted that "Vyvanse continues to show benefit for attention, focus and task completion[,]" Plaintiff experienced "some benefit" from Abilify and "maintained the olanzapine[,]" and "[h]is sleep has improved and a lot of the PTSD and nightmare material has been helped[.]" (*Id*. at 769.)

- June 6, 2017: Dr. Mann indicated that Plaintiff experienced "positive effects" from Abilify and Seroquel, recommended a "switch to Zyprexa," and encouraged Plaintiff to "experiment with the dose until he finds the dose combination that gives them good daytime control of agitation and good nighttime sleep without next day drowsiness." (*Id*. at 759.)

PAGE 8 – OPINION AND ORDER

- December 1, 2017: Plaintiff reported that he has "days that he doesn't get out of bed," and that "[h]e's noticed that he's less impulsive on Zyprexa" and "is able to fall asleep better" (*id.* at 753); Plaintiff reported that "Vyvanse . . . kicks in around 11 AM" and gives him "about 10-12 hours of effectiveness." (*Id.*)

- May 31, 2018: Dr. Mann noted that Plaintiff presented as "euthymic" and that his psychometric scores "are improved" and showed "vast improvement" from Vyvanse (*id.* at 1096); Dr. Mann noted that "prazosin . . . really helps cut down on nightmares" and "[h]e's been on olanzapine . . . with significant stabilization of agitated mood changes" and if he misses olanzapine "he has significant dysphoria" (*id.* at 1097); Plaintiff reported that "[h]e continues to struggle with impulse anger control and has not seen any benefit with either Vyvanse or the prazosin for that." (*Id.*)

- August 21, 2018: Dr. Mann noted Plaintiff's mood as "euthymic" and noted that "[h]is psychometric scores are significantly improved from prior" (*id.* at 1091), "[h]e's been sleeping well partially because the olanzapine and guanfacine are taken in the evening hours" (*id.* at 1092), "he's pretty much alert and able to sustain focus within an hour or so after . . . Vyvanse + cup of coffee" (*id.*), and "[h]e has been getting more exercise and is starting to look into some job opportunities despite the ongoing appeal for disability." (*Id.*) Dr. Mann noted that "he's showing good stability" and recommended a six-month follow up. (*Id.* at 1090.)

These medical records demonstrate that the ALJ reasonably concluded that Plaintiff's symptoms improved overall with medication and mental health treatment.

Plaintiff does not specifically challenge the ALJ's discounting of his symptom testimony based on evidence of improvement and effective treatment, and the Court finds no error in the ALJ's analysis. Therefore, the Court finds that the ALJ discounted Plaintiff's testimony regarding the severity of his symptoms based on clear and convincing reasons supported by substantial evidence. *See Gormley v. Kijakazi*, No. 21-35193, 2022 WL 486625, at *1-2 (9th Cir. Feb. 17, 2022) (holding that the ALJ provided specific, clear, and convincing reasons supported by substantial evidence for discounting the severity of the claimant's alleged "mental health symptoms" where the "ALJ noted that [her] depression was in partial remission in early 2019, her mood symptoms were described as stable, her anxiety was noted to be more manageable, and she was able to identify triggers and develop coping mechanisms"); *see also Ahearn v. Saul*, 988

F.3d 1111, 1115 (9th Cir. 2021) ("[T]he threshold for [substantial] evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019))).

### 2.     Work Activities

In addition to Plaintiff's improvement and effective treatment, the ALJ properly discounted Plaintiff's claims of debilitating "psychological symptoms" on the ground that they are inconsistent with evidence that Plaintiff "has in fact been working during the relevant period." (Tr. 20.)

"An ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled[.]" *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). Here, in two sections of the ALJ's decision, the ALJ contrasted Plaintiff's claims of total disability with evidence that Plaintiff had worked during the relevant period. (*See* Tr. 16, 20.) In considering whether Plaintiff had engaged in substantial gainful activity during the relevant period, the ALJ noted Plaintiff's testimony that "he had not worked since 2013" and found "that is not factually correct[.]" (*Id*. at 16.) The ALJ explained that "the medical evidence includes reports of Plaintiff engaging in jobs and projects during the relevant period." (*Id*.) The ALJ cited notes from Plaintiff's therapy sessions in 2016 and 2017 in which Dr. Orton documented that Plaintiff was "starting to do odd jobs" in July 2016 (*id*. at 827) and was doing "remodeling work" for a friend in August 2016. (*Id*. at 826.) In September 2016, Plaintiff reported that he "finished up his job . . . laying carpet – 120 feet – cutting outside" but "hasn't gotten paid." (*Id*. at 821.) Plaintiff told Dr. Orton on August 23, 2016, that he was "going to do light duty" and mentioned that his wife "took his pay." (*Id*. at 823.) In November 2016, Plaintiff told Dr. Orton that he had "worked

Friday." (*Id*. at 807.) In December, the chart notes reflect that Plaintiff was not working due to inclement weather. (*Id*. at 804, noting "no work" and "weather prevents projects"). In considering the evidence of Plaintiff working, the ALJ found that "[w]hile this does not establish engagement in substantial gainful activity, the discrepancies are considered herein when evaluat[ing] the inconsistencies between the claimant's subjective complaints and symptoms when compare[d] to[] the objective findings and signs." (*Id*. at 16.)

The ALJ also discounted Plaintiff's claim that he has been unable to work since 2013 when the ALJ evaluated Plaintiff's symptom testimony. (*See id*. at 20.) The ALJ cited many of the records discussed above demonstrating that Plaintiff worked at least in August, September, October, and November 2016. (*See id*., citing *id*. at 804, 807, 821, 826.) The ALJ also cited evidence demonstrating that Plaintiff was employed from September 2018 through February 2019 and received income that was reported on a W-2 earnings report. (*See id*., citing *id*. at 336.) It was therefore reasonable for the ALJ to find that, despite Plaintiff alleging that he had not worked since 2013 and was "unable to work," Plaintiff "has in fact been working during the relevant period[.]" (*Id*. at 20.)

Plaintiff does not dispute that he worked in 2016, 2018, and 2019. Instead, Plaintiff argues that, in the absence of any "findings" as to the "nature, frequency, or duration of the work[,] . . . there is no way to discern whether it was in conflict with his professed limitations." (Pl.'s Br. at 5.) The Court disagrees. Given Plaintiff's claim of having "extreme limitations in interacting with others" and his professed inability to work—both of which were noted by the ALJ (*see* Tr. 20), and in light of the evidence cited by the ALJ showing that Plaintiff engaged in remodeling work, odd jobs, and employment involving a W-2 during the relevant period, *see supra*, the Court has no trouble discerning that the work conflicted with Plaintiff's allegations.

*See, e.g.*, *James B. v. Saul*, No. 3:19-cv-01837-AC, 2020 WL 8085139, at *3 (D. Or. Dec. 22, 2020), *report and recommendation adopted*, 2021 WL 76952 (D. Or. Jan. 8, 2021) (finding that "the ALJ provided a . . . clear and convincing reason to reject [the p]laintiff's subjective symptom testimony" where the evidence showed that the plaintiff "performed part-time, under-the-table work . . . including helping friends with painting and light construction work" and the ALJ found "[the p]laintiff's work activities contradict his testimony that he experienced completely disabling physical symptoms" (citing *Ford*, 950 F.3d at 1156)).

Plaintiff argues that "the ability to work part-time does not defeat claims or credibility." (Pl.'s Br. at 5, citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). In *Ford*, however, the Ninth Circuit affirmed the discounting of a medical opinion based on evidence that the plaintiff had worked "part-time at FedEx . . . [for] approximately 12 to 13 hours a week[.]" 950 F.3d at 1152, 1156. The examining physician concluded that the plaintiff's ability to perform basic work functions was "poor to limited," but the ALJ found that opinion "inconsistent with [the plaintiff]'s work for FedEx, which demonstrated an ability to sustain a work schedule, tolerate work-related stress, and perform simple tasks." *Id.* The Ninth Circuit found no error and held that "[a]n ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled." *Id.*

Since *Ford*, the Ninth Circuit has issued several unpublished decisions holding that a claimant's performance of part-time work provides grounds to discount testimony that they are too disabled to work. *See, e.g.*, *Scavone v. O'Malley*, No. 23-35132, 2024 WL 1553695, at *2 (9th Cir. Apr. 10, 2024) (finding that the ALJ "reasonably concluded that [the plaintiff]'s more extreme claims about his symptoms and limitations are inconsistent . . . with [his] ability to occasionally work part time" and concluding that the ALJ "provided 'specific, clear and

convincing reasons' for discounting [the plaintiff]'s testimony concerning the severity and effects of his symptoms" (citing *Ford*, 950 F.3d at 1156)); *see also Resco v. O'Malley*, No. 23-35177, 2024 WL 3177785, at *2 (9th Cir. June 26, 2024) (finding that the ALJ offered "specific, clear, and convincing reasons" for discounting the plaintiff's testimony regarding the severity of her symptoms where the "the ALJ explained that [plaintiff]'s symptom testimony was undermined by her performing non-sedentary, part-time work during the relevant period, and by evidence that she could return to work" (citing *Ford*, 950 F.3d at 1156)); *Camarena v. Kijakazi*, No. 20-36083, 2021 WL 5905720, at *1 (9th Cir. Dec. 14, 2021) (noting the claimant's admission that she was "working around 20 hours per week" and finding that her "work history contradicted her testimony regarding her physical limitations and provided a non-arbitrary ground on which the ALJ could discredit her testimony" (citing *Ford*, 950 F.3d at 1156)).

In sum, the Court finds that the ALJ did not err in discounting Plaintiff's symptom testimony based on evidence that Plaintiff worked in 2016, 2018, and 2019. *See Vela v. Kijakazi*, No. 23-35075, 2023 WL 8592873, at *2 (9th Cir. Dec. 12, 2023) (finding no error where the "[t]he ALJ provided clear and convincing reasons for finding that the [claimant]'s symptom testimony was not credible" including evidence "that [the claimant] had held multiple and concurrent part-time jobs" (citing *Ford*, 950 F.3d at 1156)); *see also Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (finding no error where the ALJ discounted the plaintiff's symptom testimony based on evidence that "undermined [his] complaints" including evidence that the plaintiff "did carpentry work under the table . . . after his date last insured" and "was active with yard work, work around the house, and . . . was able to continue his past work as a contractor").

///

PAGE 13 – OPINION AND ORDER

### 3.    Daily Activities

In addition to Plaintiff's work activities, the ALJ discounted Plaintiff's symptom testimony based on evidence of social activities. (*See* Tr. 20.)

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Trevizo*, 871 F.3d at 682 (citing *Ghanim*, 763 F.3d at 1165). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (first citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010); and then citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009)), *superseded by statute on other grounds*.

Here, the ALJ found that "[Plaintiff] has reported he likes to socialize" and cited Dr. Orton's treatment notes from his therapy sessions with Plaintiff that took place from March 2016 to January 2017. (Tr. 20.) Plaintiff argues that the ALJ "impermissibly cherry picked the record" and improperly "rejected all of Plaintiff's testimony about his difficulty getting along with people" based on limited evidence from 2016. (Pl.'s Br. at 6-7.) Even assuming that the ALJ overstated the evidence regarding Plaintiff's social activities, the error would be harmless because the ALJ reasonably discounted Plaintiff's symptom testimony based on evidence of improvement and work activities. *See Jones v. Saul*, 818 F. App'x 781, 781-82 (9th Cir. 2020) (holding that the ALJ provided clear and convincing reasons for discounting the claimant's testimony and thus "[a]ny error in the ALJ's additional reasons for discounting [the claimant's] symptom testimony [were] harmless"); *Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017)

(affirming the ALJ's discounting of the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence" for doing so).

## II.    LAY WITNESS TESTIMONY

Plaintiff argues that the ALJ erred in "rejecting the observations" of Plaintiff's wife, Angela J. (Pl.'s Br. at 11.) The Commissioner argues that the ALJ properly evaluated Angela J.'s testimony, and even if the ALJ erred, the error was harmless because her testimony was substantially similar to Plaintiff's testimony, which the ALJ properly discounted. (Def.'s Br. at 8-9.)

"Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina*, 674 F.3d at 1114 (citations omitted). The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine*, 574 F.3d at 694. "[W]hen an ALJ provides clear and convincing reasons for rejecting the credibility of a claimant's own subjective complaints, and the lay-witness testimony is similar to the claimant's complaints, it follows that the ALJ gives 'germane reasons for rejecting' the lay testimony." *Williams v. Astrue*, 493 F. App'x 866, 869 (9th Cir. 2012) (citation omitted); *see also Valentine*, 574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the claimant]'s own subjective complaints, and because [the claimant's wife]'s testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the wife's] testimony").

Here, Angela J. stated that Plaintiff had "significant trouble with memory, temper, and interacting with others," and the ALJ found that Angela J.'s statements were "not fully consistent" with medical records showing that Plaintiff's symptoms improved. (Tr. 19.) Plaintiff disputes that the evidence the ALJ cited demonstrates improvement. (Pl.'s Br. at 12.) Even if the

ALJ misconstrued the evidence as Plaintiff contends, any such error would be harmless because

the ALJ also found that Angela J.'s testimony was "generally consistent" with Plaintiff's

testimony (Tr. 19), "and [an] ALJ's reasons for rejecting [a plaintiff]'s testimony apply with

equal force to the lay testimony." *Molina*, 674 F.3d at 1122; *see also Jacob v. Berryhill*, 756 F.

App'x 709, 711-12 (9th Cir. 2018) (finding any error in the ALJ's rejection of lay witness

testimony harmless because it "overlaps substantially" with the plaintiff's testimony and "'[an]

ALJ's reasons for rejecting a claimant's testimony . . . apply with equal force to the lay

testimony'" (citing *Molina*, 674 F.3d at 1122)); *De Mello v. Kijakazi*, No. 22-35111, 2022 WL

17583054, at *1 (9th Cir. Dec. 12, 2022) (finding that the ALJ "permissibly rejected the

testimony of [the claimant]'s wife, which overlapped with [the claimant]'s own testimony" and

finding that "any claimed error was harmless . . . given the similarity between [the claimant's

and his wife's] testimony" (citing *Molina*, 674 F.3d at 1122)).

## III.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law[3]

The Ninth Circuit distinguishes among the opinions of three types of physicians: treating

physicians, examining physicians, and non-examining physicians. *Garrison*, 759 F.3d at 1012

(citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "Where a treating or examining

physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and

resolve the conflict.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)).

"An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and

---

[3] The ALJ explained that he evaluated the medical opinion evidence "applying the prior rules" because Plaintiff filed his claim before March 27, 2017. (Tr. 20, citing 20 C.F.R. §§ 404.1527, 416.927; *see also* Pl.'s Br. at 9, noting that his claim "predates the 2017 regulatory changes.")

legitimate reasons that are supported by substantial evidence.'" *Ghanim*, 763 F.3d at 1161

(quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted). Merely stating

conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his

own interpretations and explain why they, rather than the doctors', are correct." *Id.* (quoting

*Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "[A]n ALJ errs when he rejects a medical

opinion or assigns it little weight while doing nothing more than ignoring it, asserting without

explanation that another medical opinion is more persuasive, or criticizing it with boilerplate

language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citing *Nguyen*

*v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

### B.    Analysis

Plaintiff challenges the ALJ's decision assigning Dr. Orton's opinion "little weight." (*Id.*

at 23.) Plaintiff argues, and the Court agrees and so finds, that "the ALJ erred by failing to

address Dr. Orton's opinions under 20 C.F.R. § 404.1527(c)(2)-(6)." (Pl.'s Br. at 8.)

Dr. Orton was Plaintiff's treating psychologist. (Tr. 16.) Dr. Orton saw Plaintiff for

weekly individual therapy from March 2016 to January 2017 for a total of thirty-eight visits. (*Id.*

at 785.) Dr. Orton provided a detailed report of his work with Plaintiff that discussed Plaintiff's

impairments, symptoms, strategies for improvement, and capacity for gainful employment. (*Id.*)

In his report, Dr. Orton noted that Plaintiff "was positively invested in working on his problems

and improving his life." (*Id.* at 785.) Plaintiff's treatment goals were "to improve his emotional

regulation skills (as reflected in better anger management), decrease his isolation and fear of

going out into public, [and] improving his depression management skills." (*Id.* at 787.) Dr. Orton and Plaintiff "also focused on . . . evaluating possible career options as he felt better able to re-enter the workforce." (*Id.* at 788.) Dr. Orton found that Plaintiff "did make progress in treatment," but it was Dr. Orton's "opinion at the end of January 2017, [that Plaintiff] was still unable to function consistently on a daily basis in a way that would promote gainful, successful employment." (*Id.*) Dr. Orton noted that Plaintiff "was doing better managing his anger (the frequency had dropped significantly over the last half of 2016)," but "would occasionally erupt in anger at home, while driving, and following difficult interactions with others." (*Id.*) Dr. Orton concluded that, "[w]ithout ongoing treatment, there is little likelihood . . . that [Plaintiff] will regain the emotional stability and self-confidence required to work in a competitive work environment." (*Id.*) Dr. Orton determined that Plaintiff's emotional dysregulation, anxiety and depression would interfere with attendance and would cause Plaintiff to miss an average of four days of work each month for reasons that would "vary depending [on] stressors in his life." (*Id.* at 793.)

The Ninth Circuit has explained that "[t]he ALJ is required to consider the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to afford the treating physician's medical opinion." *Ghanim*, 763 F.3d at 1161. Specifically, an ALJ is required to consider the "length of the treatment relationship and the frequency of examination by the treating physician," the "nature and extent of the treatment relationship," "the supportability of the physician's opinion with medical evidence," and "the consistency of the physician's opinion with the record as a whole." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)-(6)) (simplified). Here, the ALJ did not mention the factors under 20 C.F.R. § 404.1527(c)(2)-(6), which constitutes error. *See Trevizo*, 871 F.3d at 676 (remanding the case because ALJ did not consider the factors listed

in 20 C.F.R. § 404.1527(c)(2)-(6)); *see also Miranda W. v. Saul*, 509 F. Supp. 3d 1270, 1285-86 (D. Or. 2020) (noting that the ALJ "did not mention the § 404.1527 factors at all" and finding that "the ALJ committed . . . error by not analyzing [the physician]'s opinion as that of an acceptable treating medical source" (citing *Trevizo*, 871 F.3d at 676)).

The ALJ committed further error by discounting the opinion of Dr. Orton on the ground that it "appears to rely heavily on the subjective reporting of [Plaintiff]." (Tr. 23.) First, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient."). In fact, "[i]t is completely appropriate for mental health professionals to rely on their patient's subjective reports." *Gallant v. Saul*, 783 F. App'x 688, 691 (9th Cir. 2019). "Thus, a psychologist's reliance on subjective reports, without more, is not a legitimate reason for discrediting the psychologist's opinion." *Id.* (citing *Buck*, 869 F.3d at 1049). For these reasons, the ALJ's decision to assign Dr. Orton's opinion little weight because it appeared to "rely heavily" on Plaintiff's self-reports is not a specific and legitimate reason to discredit Dr. Orton's opinions. *See Hallie B. v. Kijakazi*, No. 2:20-cv-00200-SB, 2023 WL 4864441, at *9 (D. Or. July 31, 2023) ("[T]he ALJ cannot reject [the treating psychologist]'s opinion solely because it relies heavily on Plaintiff's self-reports."); *Erica S. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01026-IM, 2020 WL 1131483, at *6 (D. Or. Mar. 9, 2020) ("Although [the consulting psychologist's] findings appear to be based primarily on Plaintiff's reporting, this reporting was obtained through clinical interview, and [the psychologist] also conducted a mental status evaluation. As such, . . . this was not a proper reason to disregard [the

psychologist's] report.") (citation omitted). It was also improper for the ALJ to discount Dr. Orton's opinion where there was no indication that Dr. Orton questioned Plaintiff's self-reports or discredited his complaints. *See Ryan,* 528 F.3d at 1199-1200 ("[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations.").

Finally, the ALJ erred in discounting Dr. Orton's opinion based on inconsistencies with the medical evidence. The ALJ discounted Dr. Orton's opinions based on a finding that, "[d]uring clinical evaluations, [Plaintiff] was routinely described as cooperative and pleasant with no mention of temper control." (Tr. 23, citing *id*. at 722, 733, and 786.) As Plaintiff points out, however, the ALJ "failed to explain how [P]laintiff's ability to cooperate with his treating psychologist and two consultative examiners undermined Dr. Orton's opinions." (Pl.'s Br. at 10.) The Court agrees and finds no conflict between Plaintiff being "cooperative" during his therapy sessions and consultative examinations, and Dr. Orton's opinion that Plaintiff lacks "the emotional stability and self-confidence required to work in a competitive work environment" (Tr. at 788). *See Steven V. v. Kijakazi*, No. 3:21-cv-1373-SI, 2023 WL 2387520, at *9 (D. Or. Mar. 7, 2023) (noting that "[i]t is unclear how [the p]laintiff's ability to interact with doctors in a clinical setting is inconsistent with [his treating psychiatrist]'s opinion regarding Plaintiff's functional limitations at work"); *see also McReynolds v. Colvin*, No. 12-cv-06071 RBL, 2014 WL 801238, at *7 (W.D. Wash. Feb. 28, 2014) (finding that a "plaintiff's ability to interact with doctors in a clinical setting" does not "discount [a doctor]'s specific opinion regarding [the] plaintiff's marked limitations on his ability to respond appropriately to and tolerate the pressures of a work setting").

The ALJ also misstated the evidence in concluding that none of the clinical evaluations mention temper control. (*See* Tr. 23.) As discussed above, Dr. Orton discussed Plaintiff's struggles with "emotional stability" and with "managing his anger" and specifically noted that Plaintiff continued to experience "fearfulness about losing his temper in the workplace," which Dr. Orton found "was not . . . irrational." (Tr. 788.) Dr. William Trueblood, Ph.D, conducted a consultative examination and also addressed Plaintiff's PTSD, anxiety, and depression. (*Id*. at 723-24.) Dr. Trueblood noted that Plaintiff "may become angry" or "react[] strongly" in social situations and noted that, when Plaintiff is triggered or startled, he experiences "feelings of rage" and wants to punch someone. (*Id*.) The ALJ also cited Dr. Michael Henderson's physical evaluation of Plaintiff who found, in that context, that Plaintiff was "cooperative" but noted twice that Plaintiff also appeared "anxious." (*Id*. at 733.) The Court finds no conflict between the evidence cited by the ALJ and Dr. Orton's opinion with respect to Plaintiff's limitations.

Finally, the ALJ erred in discounting Dr. Orton's opinion as to Plaintiff's limitations based on evidence that Plaintiff was "working, exercising, and engaging in social activities." (Tr. 23.) Generally, "[a] conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion." *Ford*, 950 F.3d at 1155. Where "the record provides no details as to what [the plaintiff]'s . . . activities involved[,]" however, and "the ALJ did not develop a record regarding the extent to which and the frequency with which [the plaintiff's activities] . . . might undermine [his or] her claimed limitations," the ALJ "[does] not offer specific and legitimate reasons for rejecting [a treating physician]'s opinion." *Trevizo*, 871 F.3d at 676 (citation omitted).

Here, the ALJ cited evidence that Plaintiff talked to his daughter and visited with a friend's son on Father's Day in 2016, went camping once and started to do odd jobs in July 2016,

was doing remodeling work in August 2016, helped a friend lay carpet in September 2016, and

stopped for a drink one evening in November 2016. (Tr. 23, citing *id*. at 807, 821, 826-27, and

831.) However, the record yields no further information about those activities—which appear to

be limited and sporadic—and the ALJ failed to explain how the activities contradicted Dr.

Orton's opinion that Plaintiff lacked the "emotional stability and self-confidence required to

work in a competitive work environment" (*id*. at 788).[4] *See Trevizo*, 871 F.3d at 676 (holding

that the ALJ erred in relying on work and other activities to reject physician's opinion where it

was not clear from the record "the extent to which and the frequency with which [the plaintiff]

picked up the children, played with them, bathed them, ran after them, or did any other tasks that

might undermine her claimed limitations").

It was particularly important for the ALJ to explain the conflict between Plaintiff's

reported activities and Dr. Orton's opinions in light of Dr. Orton's extensive notes that discuss

Plaintiff's ongoing struggles with severe depression, anxiety, anger, frustration, fearfulness, low

self-confidence, and feelings of despair during the time period that Dr. Orton treated Plaintiff.

(*See* Tr. 785-93.) In April 2016, for example, Plaintiff told Dr. Orton that he had three "rages"

within a single week. (*Id*. at 845.) In June 2016, Plaintiff told Dr. Orton that he "did it again –

---

[4] As discussed above, the ALJ properly relied on evidence of Plaintiff's work activities in
2016, 2018, and 2019, in discounting Plaintiff's specific testimony that he had not worked since
2013 and that his significant difficulties being around other people prevented him from working.
(*See* Tr. 16, 20.) In that context, evidence of any non-solitary work activity was sufficient to
discredit Plaintiff's claimed limitations—even without further detail as to the nature and
frequency of those activities. However, when the ALJ cited similar evidence to discount the
opinion of Plaintiff's treating physician, Dr. Orton, the ALJ needed to develop the record to
demonstrate why Plaintiff's ability to engage in occasional work and social activities that appear
to be limited and sporadic are inconsistent with Dr. Orton's opinion that Plaintiff lacks the
emotional stability and self-confidence required for employment in a competitive environment.

freaked out" and said he was yelling at neighborhood teenagers in a manner that caused his wife

to call him a "raging asshole" and talk about moving out because she couldn't handle his rage

anymore. (*Id*. at 829.) Plaintiff also talked to Dr. Orton about feeling "helpless," "disappointed"

in himself, and like he was doing "everything wrong." (*Id*. at 829-30.) In July 2016, Dr. Orton's

treatment notes focused on Plaintiff's significant distress over the news that his son had just been

arrested for a felony, and on Plaintiff's nightmares, lack of sleep, a sense of failure, and feelings

of worthlessness. (*See id*. at 827-28.) In early August 2016, Dr. Orton noted that Plaintiff's wife

"broke down about finances" and that Plaintiff was feeling discouraged and angry. (*Id*. at 826.)

During the second week of August 2016, Plaintiff was feeling significantly isolated, with "no

sense of humor," and like he "fell into a hole and can't get out." (*Id*. at 824.) In mid-September

2016, Plaintiff told Dr. Orton that he had "lost it" again and had another "uncontrollable"

episode that caused his wife to cry and tell him once again "it's over." (*Id*. at 819.) At the end of

September 2016, Plaintiff and Dr. Orton discussed "all of the episodes of rage" and Plaintiff

expressed fear that his wife was leaving him. (*Id*. at 818.) In October 2016, Plaintiff told Dr.

Orton about his efforts to read but explained that his "mind goes into depression and angry state"

(*id*. at 815), and Plaintiff's treatment notes from December 2016 indicate that Plaintiff was

"really upset," was ruminating about past failures and financial stress (*id*. at 804-06), and was

asking himself "how did I turn out so bad" (*id*. at 806).

Based on the evidence above, the Court finds that the ALJ highlighted portions of the

medical record that support his decision and failed to evaluate Dr. Orton's opinion in the context

of his overall diagnosis. *See Garth A. v. Saul*, No. 6:19-cv-01592-SB, 2020 WL 7388616, at *7

(D. Or. Dec. 16, 2020) (noting that the ALJ "appeared to selectively consider the evidence that

supports his decision and overlook the evidence that contradicted his findings" and "failed to

PAGE 23 – OPINION AND ORDER

evaluate [the doctor]'s opinion in context of the overall diagnostic picture he drew") (citation omitted); *see also Melissa B. v. Saul*, No.1:19-cv-00363-SB, 2020 WL 5517260, at *3 (D. Or. Sept. 14, 2020) (noting that the ALJ erred by cherry-picking record evidence that supported his decision to discount the treating physician's opinion and "overlooked significant, probative evidence that contradicted his findings"); *Adeena W. v. Saul*, No. 6:19-cv-00051-SB, 2020 WL 2992191, at *5 (D. Or. June 4, 2020) (noting that ALJs cannot "cherry-pick" from the record to support their findings and "ignore evidence that contradicts [their] findings").

For the reasons discussed, the Court finds that the ALJ committed harmful error in discounting Dr. Orton's opinion.

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings consistent with this opinion.[5]

**IT IS SO ORDERED.**

DATED this 31st day of December, 2024.

HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[5] Plaintiff seeks remand for a rehearing, not for an immediate award of benefits. (*See* Pl.'s Br. at 14; Pl.'s Reply Br. at 12, ECF No. 29.)